UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:18-cr-00077 |
| ) | |
| BRENDA MONTGOMERY, ) | Judge William L. Campbell, Jr. |
| ) | |
| *Defendant.* ) | |

**DEFENDANT BRENDA MONTGOMERY'S MOTION FOR
COMPASSIONATE RELEASE AND REQUEST FOR EXPEDITED CONSIDERATION**

Defendant Brenda Montgomery, by and through counsel, respectfully moves the Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to modify Mrs. Montgomery's term of imprisonment to serve the remainder of her sentence on home confinement. This request would protect Mrs. Montgomery from the spread of the novel coronavirus 2019 ("COVID-19") by having her shelter-in-place at her residence in light of her serious underlying (and pre-existing) health problems, which place Mrs. Montgomery in the COVID-19 high-risk category. Defendant also asks the Court to consider this motion on an expedited basis given the on-going threat to her health.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Mrs. Montgomery is 72 years old and has "a history of serious health issues [ ] consisting of cardiovascular disease, strokes, high blood pressure (hypertension), and bladder and urinary tract issues." (D.E. 299, PSR at PageID # 8847 ¶ 83). On August 28, 2019, this Court sentenced Mrs. Montgomery to serve 42 months imprisonment to be followed by a one-year term of supervised release for violations of the Anti-Kickback Statute. (D.E. 296, Judgment). Mrs. Montgomery was ordered to self-report in October 2019; however, on September 20, 2019, Mrs.

1

Montgomery underwent an invasive angiogram procedure that removed severe occlusions from her coronary arteries. (D.E. 301, Motion to Extend Reporting Date). As a result, the Court extended Mrs. Montgomery's reporting date to January 20, 2020 to allow Mrs. Montgomery to complete cardiac rehabilitation. (D.E. 308, Order). In November 2019, Mrs. Montgomery was diagnosed with significant renal artery stenosis. (Attachment 1, Letter from Dr. Olafsson)[1]. Mrs. Montgomery self-surrendered on January 20, 2020 to FMC Carswell located in Fort Worth, Texas.

Since arriving at FMC Carswell, Mrs. Montgomery has suffered a series of significant falls due to the uneven flooring of the facility and recurrent sciatica that has resulted in prolonged occurrences of incapacitation. (Attachment 2, Letter from Brenda Montgomery). In early-March 2020, following one of these falls and x-rays (which were negative for fracture), Mrs. Montgomery was confined to her bed for three (3) weeks. These falls are not only attributable to the physical layout of the facility, back pain and advanced age, but also because Mrs. Montgomery is also rapidly losing her ability to see due to the progression of Fuchs' Dystrophy, a degenerative disease of the eye. (D.E. 299, PSR at PageID # 8848 ¶ 86). Over the years, Mrs. Montgomery has treated this disease with prescribed eye-drops; however, FMC Carswell will not allow Mrs. Montgomery to receive this treatment.

Each night, Mrs. Montgomery sleeps 2-3 feet apart from her four cellmates in a 17' x 20' room packed with hospital beds, walkers, wheelchairs, CPAPs, and oxygen concentrators.[2] Most

---

[1] To be submitted separately under seal.

[2] Mrs. Montgomery is housed in the same unit at FMC Carswell that Jenelle Pinkston was housed in prior to this Court's release order:

> Defendant asserts that she is housed in a 20 by 24-foot room with ten other women who also have serious health issues, along with their various medical devices such as CPAP machines and wheelchairs. The women sleep in beds that are about three feet apart. Defendant asserts that these living conditions leave her unable to follow the CDC's recommendation for social distancing and remaining at least six feet apart from other individuals.

troubling, despite being incarcerated in a medical facility and having a significant history of hypertension and strokes, Mrs. Montgomery regularly goes significant periods of time without having a blood pressure reading taken. This indifference to basic medical care is manifest in Mrs. Montgomery's primary care-giver's response that she "guess" her own blood pressure rather than perform a proper examination because access to a blood-pressure cuff is very limited and prisoners' movement is highly restricted within the facility due to COVID-19.

Since April 1, as a result of COVID-19, Mrs. Montgomery has been confined to her hospital floor at all times, but there is no actual testing of inmates or guards for COVID-19 at FMC Carswell. BOP's strategy for limiting the spread of COVID-19 in its facilities is to take the temperature of guards and to restrict some forms of inmate movement.[3] Guards at FMC Carswell are not required to wear masks and most choose not to wear the masks when present on Mrs. Montgomery's floor. The results of BOP's overall strategy are self-evident—on April 21, FMC Fort Worth, located just a few minutes away from FMC Carswell, reported 35 cases of COVID-19.[4] Only thirteen days later, on May 4, the reported disease incidence at FMC Fort Worth increased by 1,271% to 445 confirmed cases and 4 deaths.[5]

According to the BOP's website, FMC Carswell has one confirmed case of COVID-19 and one death.[6] However, it is widely reported that the BOP has been understating the severity of this

---

*United States v. Pinkston*, PageID # 548, (M.D. Tenn. Apr. 15, 2020).

[3] Bureau of Prisons, *BOP Implementing Modified Operations* (May 1, 2020),
*available at* https://www.bop.gov/coronavirus/covid19_status.jsp

[4] NBCDFW, *COVID-19 Cases Nearly Quadruple Inside Fort Worth Federal Medical Prison* (Apr. 23, 2020),
*available at*
https://www.nbcdfw.com/news/coronavirus/covid-19-cases-quadruple-to-132-at-fort-worthfederalprison/ 2356912/

[5] Bureau of Prisons, *COVID-19 Coronavirus* (May 4, 2020), *available at* https://www.bop.gov/coronavirus/

[6] *Id*.

3

problem at its facilities, and specifically at FMC Carswell.[7] On April 7, 2020, the union representing prison guards at FMC Carswell filed a whistleblower complaint alleging that "FMC Carswell knowingly and willfully misled the public placing the staff, inmates and community at risk in the most lethal pandemic since 1920."[8] In the case of the recent inmate death at FMC Carswell,[9] after the inmate was taken to a local hospital for COVID-19 symptoms, she was simply returned to FMC Carswell where she had direct contact with over half-a-dozen guards and nurses who, in turn, had direct contact with additional inmates and staff because "there has not been any guidance given to all staff as far as processes and procedures in maintaining health and safety."[10]

These facts lead to three grim conclusions—(1) COVID-19 testing and precautions at FMC Carswell are non-existent, (2) the facility is not capable of effectively treating COVID-19 patients, and (3) BOP's strategy for containing the spread of this unprecedented disease is failing.

On March 26, 2020, Mrs. Montgomery, through counsel, petitioned the warden of FMC Carswell to file a motion with the Court requesting a reduction of Mrs. Montgomery's sentence or, in the alternative, to modify her sentence to allow her to serve the remainder of her term in home confinement. (Attachment 3, Letter to Warden Carr)[11]. On April 24, Mrs. Montgomery's request was denied. (Attachment 4, Denial).

---

[7] Walter Pavlo, *Bureau Of Prisons Underreporting COVID-19 Outbreaks In Prison* (Apr. 1, 2020), *available at* https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison/#7ce2c1e07ba3

[8] American Federation of Government Employees FMC Carswell Local 1006, *Letter to Senator John Cornyn* (Apr. 7, 2020), at 4, *availible at* https://www.documentcloud.org/documents/6879694-2020-04-07-14-16-14.html.

[9] *Prisoner With Coronavirus Dies After Giving Birth While on Ventilator,* New York Times, April 29, 2020, available at: https://www.nytimes.com/2020/04/29/us/coronavirus-inmate-death-andrea-circle-bear.html

[10] *Letter to Senator John Cornyn*, supra note 7, at 3.

[11] To be submitted separately under seal.

Undersigned counsel has consulted with the government about the relief requested by this motion. The government, through counsel, has informed defendant's counsel that it opposes the motion.

## II. APPLICABLE LAW

In December 2018, Congress passed the First Step Act, Section 603 of which transformed the process for compassionate release under § 3582(c)(1)(A) to allow prisoners to directly petition courts. Accordingly, the compassionate release statute now states in relevant part:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A). The applicable "policy statement[ ] issued by the Sentencing Commission" states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The Sentencing Commission has not amended or updated the policy statement since the First Step Act was enacted; thus, U.S.S.G. § 1B1.13 and the corresponding Application Notes contain "relic[s] of the prior procedure that [are] inconsistent with the amendments implemented by the First Step Act." *See United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *3-6 (M.D. Tenn. Mar. 4, 2020) (providing the history of the compassionate-release statute and the Commission's policy statement). "Therefore, although the Sentencing Guidelines and BOP policy provide helpful guidance, district courts are not bound by those sources in determining what constitutes extraordinary and compelling reasons for compassionate release under Section 3852(c)(1)(A). *See United States v. Pinkston*, PageID # 546, (M.D. Tenn. Apr. 15, 2020) (citations omitted).

### III. ARGUMENT

The extraordinary and compelling circumstances arising from the spread of the novel coronavirus ("COVID-19"), when considered together with Mrs. Montgomery's pre-existing health problems and the continued deterioration of her health since her incarceration, provide the basis for this Court to order the compassionate release of Mrs. Montgomery. Mrs. Montgomery is 72 years old and suffers from cardiovascular disease with a history of strokes and high blood pressure. Since her sentencing in this case, she has been diagnosed with renal artery stenosis, a precursor to chronic kidney disease.[12] Her age, heart condition, and diminished kidney function, independently and separately, place Mrs. Montgomery in COVID-19's high-risk group.[13] The

---

[12] National Institute of Diabites and Digestive and Kidney Diseases, *What Are the Possible Complications of RAS*, (May 5, 2020), *available at*
https://www.niddk.nih.gov/health-information/kidney-disease/renal-artery-stenosis#complications

[13] Centers for Disease Control*, COVID-19: What if You are High Risk* (May 1, 2020), *available at*
https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html

6

combination of these risk factors inevitably puts Mrs. Montgomery at even higher risk. Mrs. Montgomery's Pre-Sentence Investigation Report and subsequent medical history establish that Mrs. Montgomery is in extremely poor health.

"**The best way to prevent illness is to avoid being exposed to this virus.**"[14] The CDC has provided clear guidance that **"[o]lder adults and people who have severe underlying medical conditions** like heart [disease, are] at higher risk for developing serious complications from COVID-19 illness.[15] "[F]or people," like Brenda Montgomery, "who are at higher risk of getting very sick, . . . [k]eeping distance from others is especially important."[16]

Mrs. Montgomery is 72 years old and has a documented history of severe cardiovascular disease. As COVID-19 infiltrates FMC Carswell, as it inevitably will, Mrs. Montgomery will not be permitted to exercise essential self-care by keeping distance from others and by avoiding contact with infected individuals. Indeed, it's impossible even to know who is infected at FMC Carswell because of a complete lack of adequate testing mechanisms. The risk of exposure and infection will be significant due to the close quarters in which Mrs. Montgomery is housed with other inmates in the chronic care unit of FMC Carswell. Bluntly, given Mrs. Montgomery's underlying health conditions, if she becomes infected, she will face an effective death sentence. That was most certainly not the Court's intention when sentencing Mrs. Montgomery prior to the COVID-19 pandemic.

If Mrs. Montgomery is released from custody, her husband, Jimmy Montgomery, will drive to Fort Worth and immediately return her to her residence located in Benton County, Tennessee at

---

[14] Centers for Disease Control, *How to Protect Yourself and Others* (May 1, 2020), *availible at* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (emphasis in original).

[15] *Id*. (emphasis in original).

[16] *Id*.

7

95 Cedar Drive, Camden Tennessee, 38320, where she will reside for the remainder of her sentence. We note that as of April 30, 2020, Benton County had reported only five (5) cases of COVID-19.[17] Mrs. Montgomery, who was retired at the time of her sentencing, will be supported by retirement income received by her and her husband from various sources, including retirement savings. Health insurance will cover her medical care expenses. Mrs. Montgomery will receive medical treatment from her primary care physician, Dr. William Carney, M.D., and various specialists that she was seeing before her incarceration.

## CONCLUSION

For these reasons, Mrs. Montgomery asks the Court, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), to modify her sentence and to order that she serve the remainder of her sentence on home confinement. Every day – indeed, every minute – may count for someone like Mrs. Montgomery, who is at a high-risk from COVID-19 and currently lives in a facility and geographic area with documented outbreaks and limited means of protection. Mrs. Montgomery also respectfully asks the Court to consider this motion on an expedited basis and to order the government to respond as soon as practicable.

Respectfully submitted,

*/s/ Richard W. Westling*
Richard W. Westling (BPR # 30571)
Clay Lee (BPR # 29271)
Epstein, Becker & Green P.C.
424 Church Street, Suite 2000
Nashville, Tennessee 37219
Telephone (629) 802-9250
Facsimile (202) 296-2882

*Attorneys for Brenda Montgomery*

---

[17] Tennessee Department of Health, *Cases by County* (May 1, 2020), availible at https://www.tn.gov/content/tn/health/cedep/ncov/data.html

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was electronically filed on May 4, 2020. Notice of this filing will be sent by the ECF system to the following:

Sara Beth Myers
Taylor Phillips
U.S. Attorney's Office, Middle District of Tennessee
110 Ninth Avenue South
Suite A961
Nashville, TN 37203-3870
(615) 736-5151
sara.e.myers@usdoj.gov
taylor.phillips@usdoj.gov

Anthony Jerome Burba
U.S. Department of Justice, Criminal Division
1400 New York Avenue, NW
Suite 11406, Bond Building
Washington, DC 20005
(202) 307-1008
anthony.burba@usdoj.gov

*/s/ Richard W. Westling*
Richard W. Westling