# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | NO. 3:18-cr-00077-2 |
| | ) | |
| BRENDA MONTGOMERY | ) | JUDGE CAMPBELL |

## MEMORANDUM

Before the Court is Defendant's Motion for Compassionate Release (Doc. No. 397). The Government filed a Response in opposition (Doc. No. 399), Defendant filed a Reply (Doc. No. 403), and the Government filed a Surreply (Doc. No. 405). For the reasons stated below, Defendant's request is **GRANTED in part and DENIED in part**. Defendant's custody sentence of 42 months shall be reduced to 27 months.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Defendant pleaded guilty on January 7, 2019, to one count of conspiracy to violate the anti-kickback statute and conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and seven counts of payment of kickbacks in connection with a federal health care program, in violation of 42 U.S.C. § 1320a-7b(b). (Doc. No. 99). Specifically, Defendant admitted to paying approximately $770,000 in kickbacks in exchange for Medicare referrals for durable medical equipment and filing claims to Medicare relating to those referrals. (*See* PSR, Doc. No. 299 ¶ 10). The Court found that the gross proceeds of the kickback conspiracy amounted to $1,489.192.00. (*See* Doc. No. 283).

On August 28, 2019, the Court sentenced Defendant to a 42-month term of imprisonment, 1 year of supervised release, and ordered Defendant to pay a special assessment of $800 and a fine in the amount of $30,000.00. (Doc. No. 296). The Court granted a downward variance on the term

of imprisonment, based, in large part, on Defendant's age and health concerns. (*See* Montgomery Sentencing Hr'g Tr., Doc. No. 300 at 65:23-25). The Court also found that a custodial sentence in the guideline range would not be appropriate based on the totality of the circumstances with the $30,000 fine and $595,676.80 subject to forfeiture. (*See id*. at 66:1-4).

## II. STANDARD OF REVIEW

In December 2018, Congress passed the First Step Act, Section 603 of which transformed the process for compassionate release under Section 3582(c)(1)(A) to allow prisoners to directly petition courts. Until this amendment, compassionate release motions could only be brought by the Director or the Bureau of Prisons, an option that was infrequently exercised.[1] The compassionate release statute now states in relevant part:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction…
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A).

The requirement that a prisoner exhaust administrative rights to appeal or wait 30 days after the first request to the prison is a mandatory claims processing rule. *U.S. v. Alam*, 960 F.3d

---

[1] The first year after passage of the First Step Act, 145 offenders were granted compassionate release under 18 U.S.C. § 3582(c)(1)(A), a five-fold increase from fiscal year 2018, during which 24 compassionate release motions were granted. *See* United States Sentencing Commission, The First Step Act of 2018: One Year of Implementation, 46-49 (Aug. 31, 2020). Of the motions granted during the first year, 96 were filed by the offender. *Id*.

831, 833 (6th Cir. 2020). The Sixth Circuit has considered the exhaustion requirement in the context of the unique circumstances presented by the COVID-19 pandemic and concluded that it "operates as an 'unyielding procedural requirement[]'" and is not subject to equitable exceptions. *Id*. at 834. If a prisoner files an untimely motion for compassionate release, the Court should dismiss the motion without prejudice. *Id*.

The Sixth Circuit has instructed that the statute imposes a three-step test. *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020). "At step one, a court must 'find[]' whether 'extraordinary and compelling reasons warrant' a sentence reduction." *Id*. Step two requires the court to "'find[]' whether 'such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Id*. Then in step three, the court must consider "any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

In *Jones*, the Sixth Circuit addressed the applicability of the Sentencing Commission policy statement to a motion for compassionate release filed directly with the court by imprisoned persons. *See id*. at 1109-11. The Sixth Circuit noted that, since the First Step Act was enacted in 2018, the Sentencing Commission has not amended the policy statement pertaining to reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and the existing policy statement applies only to motions filed by the BOP. *Id*. Finding the existing policy statement "inapplicable" to cases filed by an imprisoned person, *Jones* instructs that in considering a motion for compassionate release filed by an incarcerated person, a court may "skip" step two of the inquiry and has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id*. at 1111.

### III. ANALYSIS

As an initial matter, the Court finds that Defendant has met the exhaustion requirement of Section 3582(c)(1)(A). Defendant submitted a request to the Warden. (Doc. No. 397-1). The Warden denied Defendant's request. (Doc. No. 397-2). The Government does not contest that she has exhausted her administrative remedies.

Defendant seeks compassionate release for the second time, arguing that the same extraordinary and compelling reasons that supported her first motion still apply—specifically her health when combined with the threat of severe illness or death from COVID-19. In addition, Defendant argues that the commutation of co-defendant John Davis' sentence is an extraordinary and compelling reason and creates an unwarranted sentencing disparity, which supports a reduction of Defendant Montgomery's sentence to time served.

**A. Extraordinary and Compelling Reasons**

As discussed above, the Sixth Circuit has given district courts broad discretion to determine what constitutes extraordinary and compelling reasons for compassionate release. *See Jones*, 980 F.3d at 1111. Here, Defendant Montgomery asks the Court to find that the commutation of Defendant Davis' sentence and the resulting sentencing disparity constitutes extraordinary and compelling reasons. The Government disputes that the commutation is an extraordinary and compelling reason on its own, and further argues that the considerations for a presidential commutation are immaterial for a court's Section 3553(a) analysis.

The Court agrees with the second point. Commutations are not bound by the Section 3553(a) factors, and White House press releases describing the offense as "a financial conflict of interest" from which "no one suffered financially" are not subject to review against the record in

4

Case 3:18-cr-00077   Document 412   Filed 05/10/21   Page 4 of 7 PageID #: 10612

this case.[2] The Court disagrees with the suggestion that there was no victim or no harm as a result of the conduct of both defendants. Yet while those statements are not the Court's findings, they apply equally to Defendant Davis and Defendant Montgomery. The Court acknowledges that Defendant Davis, perhaps as a result of certain propitious relationships with "entertainers" and other influential individuals, received the benefit of a commuted sentence. This benefit results in one defendant serving the sentence originally imposed while the other served a fraction of that time. As stated at Defendant Davis' sentencing, the Court views Defendant Davis and Defendant Montgomery as equally culpable. (Davis Sentencing Hr'g Tr., Doc. No. 388 at 151:3-4). The Court therefore finds that such glaringly lopsided sentences between these particular co-defendants constitutes extraordinary and compelling reasons for a sentence reduction.

## B. The 3553(a) Factors

Having found that extraordinary and compelling reasons exist in this case, the Court must next determine whether the Section 3553(a) factors support a reduction of Defendant Montgomery's sentence to time served. Section 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary" to comply with a number of factors including: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; the applicable Sentencing Guidelines range; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

---

[2] *See Statement from the Press Secretary Regarding Executive Grants of Clemency.* https://trumpwhitehouse.archives.gov/briefings-statements/statement-press-secretary-regarding-executive-grants-clemency-012021/ (last visited May 5, 2021).

Defendant argues that the sentence she has served to date is sufficient, that it reflects the seriousness of the crime, and that it promotes respect for the law. Defendant again argues that Defendant Davis' commuted sentence should be considered in this context, stating that "Mr. Davis, the only defendant with a similar record who has been found guilty of similar conduct, served only 133 days of incarceration." (Doc. No. 397 at 6). Defendant misstates the applicable analysis. The Sixth Circuit has held that the court's analysis should consider sentencing disparities on a national scale. *United States v. Peppel*, 707 F.3d 627 at 638 (6th Cir. 2013) ("We have previously held that this provision refers to national sentencing disparities rather than sentencing disparities among codefendants."); *United States v. Simmons*, 501 F.3d 620 at 623 (6th Cir. 2007) ("Subsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct."). The defendants in this case, contrary to counsel's assertions, are not the only individuals who have been convicted of health care fraud and are not the only offenders without prior convictions.[3] According to a 2019 report by the United States Sentencing Commission, the average custody sentence for individuals convicted of health care fraud is 34 months.[4]

In considering the arguments of the parties and the factors set forth in Section 3553(a), the Court does not find a reduction to time-served appropriate in this case. However, the Court finds that a reduction of Defendant Montgomery's sentence to 27 months is appropriate and warranted. A sentence of 27 months is sufficient to reflect the seriousness of the offense, promote respect for the law, and afford adequate general deterrence. As the Court noted at the sentencing hearing,

---

[3] A recent study by the United States Sentencing Commission found that less than 35% of health care fraud offenders had prior convictions. Office of Data and Research, U.S. Sentencing Comm'n, The Criminal History of Federal Economic Crime Offenders. 11 (2020). https://www.ussc.gov/research/research-reports/criminal-history-federal-economic-crime-offenders

[4] Office of Research and Data, U.S. Sentencing Comm'n, Quick Facts: Health Care Fraud. (2020). https://www.ussc.gov/research/quick-facts/health-care-fraud

general deterrence is an important factor in cases such as this, given the trust-based system of Medicare. (Montgomery Sentencing Hr'g Tr., Doc. No. 300 at 63:19-25). Defendant was placed in a position of trust and over a period of years repeatedly chose to violate that trust. Defendant's careful and conscious violations did not demonstrate a respect for the law. (*See id*. at 63:6-9). As a result of the conduct of both defendants, the Medicare system and the individuals who rely on it were harmed. For these reasons, a reduction of Defendant Montgomery's sentence to time served would not be sufficient. However, the Court finds that the factors do support a reduction of Defendant Montgomery's sentence to 27 months.

## IV. CONCLUSION

Having found that Defendant Montgomery demonstrates extraordinary and compelling reasons and in consideration of the 3553(a) factors, the Court finds that the pending motion (Doc. No. 397) should be **GRANTED in part** and **DENIED in part**. The request for a time served sentence is denied, but the Court finds that a reduction of Defendant Montgomery's custody sentence to 27 months is appropriate and warranted.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE